**United States District Court**
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9
    AMERICAN HOME ASSURANCE              )
10  COMPANY,                             )   Case No. 15-00303 SC
                                         )
11              Plaintiff,               )
                                         )   ORDER DENYING MOTION TO
12         v.                            )   DISMISS AND TRANSFERRING CASE
                                         )   TO THE CENTRAL DISTRICT OF
13  TUTOR-SALIBA CORPORATION/O&G         )   CALIFORNIA
    INDUSTRIES, INC. JV; TUTOR-          )
14  SALIBA CORPORATION; O&G              )
    INDUSTRIES, INC.; and R&L            )
15  BROSAMER, INC.,                      )
                                         )
16              Defendants.              )
                                         )
17  _____)

18

19

20  **I.    INTRODUCTION**

21       This is a dispute regarding insurance coverage for the

22  allegedly defective construction of an airport runway in Los

23  Angeles.  None of the events giving rise to this lawsuit occurred

24  here, and no party is a citizen of this district.  Now before the

25  Court is Defendant R&L Brosamer, Inc.'s ("Brosamer") motion to

26  dismiss for improper venue or, in the alternative, to transfer

27  venue to the Central District of California.  The motions are fully

28  ///

1 │ briefed,[1] and the Court finds them suitable for disposition without

2 │ oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons

3 │ set forth below, Brosamer's motion to dismiss is DENIED, but

4 │ Brosamer's alternative motion to transfer venue is GRANTED, and the

5 │ Court ORDERS that this action be transferred to the Central

6 │ District of California.

7 │

8 │ **II.**   **BACKGROUND**

9 │     In 2003, the City of Los Angeles (the "City") decided to

10 │ demolish, relocate, and rebuild a runway at Los Angeles World

11 │ Airport.  Compl. ¶¶ 15-16.  The City contracted with Defendant

12 │ Tutor-Saliba Corporation/O&G Industries, Inc. JV[2] (the "Joint

13 │ Venture") to demolish the old runway and build the new one.  Id. ¶

14 │ 21.  The Joint Venture subcontracted with Defendant Brosamer for

15 │ concrete and labor.  Id. ¶ 25.  Construction was complete by 2008.

16 │ Id. ¶ 19.  In 2013, the City filed a lawsuit in California Superior

17 │ Court alleging that the Joint Venture and Brosamer's construction

18 │ work was defective.  Id. ¶¶ 20, 28-31.  Plaintiff American Home

19 │ issued insurance policies to the City, and Tutor and Brosamer may

20 │ qualify as insureds under those policies.  Id. ¶ 6.  Tutor and

21 │ Brosamer tendered the claims in the underlying action to American

22 │ Home, which is providing them with defenses in that action under a

23 │ full reservation of rights.  Id. ¶¶ 7-8.  American Home then

24 │ brought this lawsuit, seeking a declaration that it does not owe

25 │

26 │ _____

   │ [1] ECF Nos. 47 ("Mot."), 55 ("Opp'n"), 58 ("Reply").

27 │

28 │ [2] Tutor-Saliba Corporation/O&G Industries, Inc. JV is a joint
   │ venture between Defendants Tutor-Saliba Corporation and O&G
   │ Industries, Inc.  Compl. ¶ 10.

United States District Court
For the Northern District of California

1  any defendant a duty to defend the underlying action.  Id. ¶¶ 47-
2  50.

3

4  **III. LEGAL STANDARD**

5     Venue is proper in (1) a judicial district in which any
6  defendant resides, if all defendants are residents of the state in
7  which that district is located; or (2) a judicial district in which
8  a substantial part of the events giving rise to the claim occurred.
9  28 U.S.C. § 1391(b).  If no such district exists, venue is proper
10  in any judicial district in which any defendant is subject to the
11  court's personal jurisdiction with respect to the action.  Id.  For
12  venue purposes, a defendant entity is a resident of any judicial
13  district in which the defendant is subject to the court's personal
14  jurisdiction with respect to the action in question.  Id.
15  § 1391(c).

16     Federal Rule of Civil Procedure 12(b)(3) allows a defendant to
17  move to dismiss an action for improper venue.  On a Rule 12(b)(3)
18  motion, "the pleadings need not be accepted as true, and the court
19  may consider facts outside of the pleadings," but the court must
20  draw all reasonable inferences and resolve all factual conflicts in
21  favor of the non-moving party.  Murphy v. Schneider Nat'l, Inc.,
22  362 F.3d 1133, 1137 (9th Cir. 2004).  When a case is filed in the
23  wrong district, the court may dismiss it, or, if it is in the
24  interest of justice, transfer it to any proper district.  See 28
25  U.S.C. § 1406(a).

26     Even if venue is proper where an action is filed, the Court
27  may "[f]or the convenience of parties and witnesses, in the
28  interests of justice . . . transfer any civil action to any other

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  District . . . where it might have been brought."  28 U.S.C.

2  § 1404(a).  The Court must undertake an "individualized, case-by-

3  case consideration of convenience and fairness."  Jones v. GNC

4  Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).  "To support

5  a motion for transfer the moving party must show: (1) that venue is

6  proper in the transferor district; (2) that the transferee district

7  is one where the action might have been brought; and (3) that the

8  transfer will serve the convenience of the parties and witnesses

9  and will promote the interest of justice."  Goodyear Tire & Rubber

10 Co. v. McDonnell Douglas Corp., 820 F. Supp. 503, 506 (C.D. Cal.

11 1992).  The Court weighs a series of factors in determining whether

12 the third element is satisfied, including:

> (1) the location where the relevant agreements were
> negotiated and executed, (2) the state that is most
> familiar with the governing law, (3) the plaintiff's
> choice of forum, (4) the respective parties' contacts
> with the forum, (5) the contacts relating to the
> plaintiff's cause of action in the chosen forum, (6) the
> differences in the costs of litigation in the two forums,
> (7) the availability of compulsory process to compel
> attendance of unwilling non-party witnesses, and (8) the
> ease of access to sources of proof.

18 GNC Franchising, 211 F.3d at 498.  Additionally, the Supreme Court

19 has recognized "a local interest in having localized controversies

20 decided at home."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 260

21 (1981).  Thus, where a "case has a significant connection to the

22 Los Angeles area . . . , the Central District has a much more

23 substantial interest in seeing a resolution of th[e] litigation."

24 Fabus Corp. v. Asiana Exp. Corp., No. C-00-3172 PJH, 2001 WL

25 253185, at *2 (N.D. Cal. Mar. 5, 2001).

26 ///

27 ///

28 ///

4

**United States District Court**
For the Northern District of California

1    IV.   **DISCUSSION**

2         The Court begins by analyzing Brosamer's motion to dismiss.

3    Because Brosamer lacks standing to bring that motion, it is DENIED.

4    The Court then turns to the alternative motion to transfer venue

5    and weighs the factors set out in <u>GNC Franchising</u>.   The Court

6    concludes that the factors weigh very strongly in favor of

7    transferring this case to the Central District of California.

8         A.   **Motion to Dismiss for Improper Venue**

9         Brosamer first argues that venue is improper in this district

10   because Defendant O&G Industries, Inc. ("O&G") is not a resident of

11   California.   As a result, Brosamer argues, not all defendants are

12   residents of California and venue is not proper under 28 U.S.C.

13   Section 1391(b)(1).   It is undisputed that the events giving rise

14   to this claim -- including both the events giving rise to the

15   underlying state court action and the state court action itself --

16   occurred in the Central District of California.   Therefore,

17   Brosamer argues, venue is proper in the Central District of

18   California only, pursuant to Section 1391(b)(2).

19        Brosamer lacks standing to raise a venue objection on O&G's

20   behalf.   "[N]either personal jurisdiction nor venue is

21   fundamentally preliminary in the sense that subject-matter

22   jurisdiction is, for both are personal privileges of the defendant,

23   rather than absolute strictures on the court, and both may be

24   waived by the parties."   <u>Leroy v. Great W. United Corp.</u>, 443 U.S.

25   173, 180 (1979).   "Improper venue is a defense personal to the

26   party to whom it applies.   Thus one defendant may not challenge

27   venue on the ground that it is improper as to a co-defendant."

28   <u>Pratt v. Rowland</u>, 769 F. Supp. 1128, 1132 (N.D. Cal. 1991).   A

defendant may bring a motion to dismiss for improper venue <u>only</u> in his first response to a complaint.  <u>Id.</u> ("[D]efendants wishing to raise improper venue as a defense must do so in their <u>first defensive move</u>.") (emphasis in original).  O&G has answered American Home's complaint and, though O&G denied that all defendants are residents of California, it has not joined Brosamer's motion, nor has it contested venue in any way.  <u>See</u> ECF No. 61 ("O&G Answer") ¶ 14.  Therefore, O&G has forfeited its opportunity to contest venue, and Brosamer may not raise the issue on O&G's behalf.  The motion to dismiss is DENIED.

     B.   <u>**Transfer of Venue**</u>

    The Court turns now to Brosamer's alternative motion to transfer venue to the Central District of California.  At the outset, it is important to note that nowhere in its fourteen page opposition brief does American Home offer a single reason that this case should be litigated in San Francisco.  The closest it comes is a plea that its choice of forum should be "accorded deference," but it offers no explanation or reason for that choice.  <u>See</u> Opp'n at 10.  On the other hand (and as explained more fully below), there are ample and obvious reasons that this case should be tried in the Central District, including that all of the events giving rise to this action occurred there, the insurance policies at issue were executed there, any witnesses or documentary evidence relevant to this case is there, and the underlying litigation is being heard in courts there.

     1.   <u>**Proper Venue in Transferor District**</u>

    As described above, Brosamer contests only O&G's California residency.  Brosamer does not deny that it and Tutor-Saliba are

**United States District Court**
For the Northern District of California

1   both residents of California, nor does it deny that at least one of

2   them is a resident of the Northern District.   Therefore, venue is

3   proper in this district so long as all defendants are residents of

4   California.   See 28 U.S.C. § 1391(b)(1).   Under 28 U.S.C. Section

5   1392(d), O&G is a resident of the Central District of California if

6   its contacts with that district are sufficient to subject it to

7   personal jurisdiction there.   Because the Central District of

8   California is in California, O&G's residency in that district would

9   presumably render it a resident of California as a whole for the

10  purposes of Section 1391(b)(1).

11      American Home does not allege that O&G is subject to general

12  jurisdiction anywhere in California.   Instead, American Home argues

13  that O&G is subject to specific personal jurisdiction. The Ninth

14  Circuit has established a three-prong test for determining specific

15  jurisdiction:

16      (1)  The non-resident defendant must purposefully direct
        his activities or consummate some transaction with the
        forum or resident thereof; or perform some act by which
17      he purposefully avails himself of the privilege of
        conducting activities in the forum, thereby invoking the
18      benefits and protections of its laws;

19      (2) the claim must be one which arises out of or relates
        to the defendant's forum-related activities; and
20

21      (3) the exercise of jurisdiction must comport with fair
        play and substantial justice, i.e. it must be reasonable.

22  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th

23  Cir. 2004).   The plaintiff bears the burden of satisfying the first

24  two prongs and, if it does, the burden then shifts to the defendant

25  to show why the exercise of personal jurisdiction would be

26  unreasonable.   Id.

27      The allegations in the complaint make it clear that O&G is

28  subject to personal jurisdiction in the Central District of

**United States District Court**
For the Northern District of California

California.  O&G formed a joint venture with Tutor-Saliba, a citizen of the Central District.  Compl. ¶ 10.  O&G then contracted (through the Joint Venture) with the City of Los Angeles to perform construction work for the City in the Central District.  Id. ¶ 21. O&G therefore purposefully directed its activities at the Central District and consummated a transaction with at least two residents of the Central District (Tutor-Saliba and the City).  This claim also arises out of and relates to those activities: the work O&G performed in Los Angeles through its joint venture was allegedly defective, and this is a related insurance lawsuit.  There is no indication that the exercise of jurisdiction in California does not comport with fair play and substantial justice; no defendant has suggested that the exercise of jurisdiction in California would be unfair.[3]

As a result, the Court finds that all defendants are residents of California and that at least one is a resident of this district. As a result, venue is proper here pursuant to 28 U.S.C. Section 1391(b)(1).

### 2.  Action Might Have Been Brought in Transferee District

It is undisputed that venue is proper in the Central District of California.  As described above, all defendants are residents of California, and at least two are residents of the Central District (O&G through of its contacts related to this litigation, and Tutor-Saliba by its principal place of business).  Therefore venue is

---

[3] Indeed, O&G has answered American Home's complaint.  While O&G suggested that at least one defendant might not be a resident of California, see O&G Answer ¶ 14, O&G never contests personal jurisdiction.

proper in the Central District pursuant to 28 U.S.C. Section
1391(b)(1).  It also undisputed that venue is proper in the Central
District pursuant to 28 U.S.C. Section 1391(b)(2) because the
events from which this suit arose took place there.

### 3.   Convenience and Interests of Justice

The Court now weighs the factors the Ninth Circuit has
identified as relevant to determining whether a transfer of venue
serves the convenience of the parties and the interests of justice.

#### i.   Location Where the Agreements Were Executed

The contracts at issue in this case are the insurance policies
that American Home issued to the City.  All of them were issued to
the City of Los Angeles for a construction project that took place
there.  Compl. ¶ 6.  They do not specify where they were executed,
but all of the policies list addresses for both the insured and
producer in Los Angeles.  See Compl. Exs. B at 16; C at 2; D at 3;
E at 4; F at 3, 10.  The Court finds that this factor weighs in
favor of a transfer of venue.

#### ii.   State Most Familiar With Governing Law

This district and the Central District are both in California.
Both are equally familiar with California law.  This factor is
neutral.

#### iii.   Plaintiff's Choice of Forum

Plaintiff American Home chose this district as the forum for
this lawsuit and, by its opposition to this motion, demonstrated a
strong preference for this suit to be heard in this district.
Strangely, though, American Home is either unwilling or unable to
articulate a single reason for that preference.  American Home is
incorporated in Pennsylvania and has its principal place of

business in New York.  Compl. ¶ 9  "A plaintiff's choice of forum is generally accorded substantial weight, and the defendant therefore bears a considerable burden in justifying transfer." Animal Legal Def. Fund v. U.S. Dep't of Agric., No. CV 12-4407-SC, 2013 WL 120185, at *4 (N.D. Cal. Jan. 8, 2013).  However, "where the operative facts have not occurred within the forum of original selection and that forum has no special interest in the parties or subject matter, the plaintiff's choice of venue merits less deference."  Id.  Additionally, "a plaintiff's choice is also given less deference when the plaintiff resides outside of the chosen forum."  Brown v. Abercrombie & Fitch Co., No. 4:13-CV-05205 YGR, 2014 WL 715082, at *3 (N.D. Cal. Feb. 14, 2014); see also Gemini Capital Grp., Inc. v. Yap Fishing Corp., 150 F.3d 1088, 1091 (9th Cir. 1998) ("the district court correctly acted on Ninth Circuit authority in granting Plaintiffs' choice of Hawaii as a forum less deference" where no plaintiff was a resident of Hawaii); Pac. Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration.").  Thus the Court finds that this factor favors maintenance of this action in this district, but the Court assigns it very little weight.

        **iv.**     **Respective Parties' Contacts with the Forum**

There is little evidence of the respective parties' contacts with this forum.  American Home asserts that Defendant Tutor-Saliba Corporation has "an extensive presence in the Northern District and particularly in the San Francisco Bay Area."  Opp'n at 13.

**United States District Court**
For the Northern District of California

1    However, Tutor-Saliba's principal place of business is in Sylmar,

2    California, which is in the Central District.  Compl. ¶ 10.  In

3    fact, no party is is headquartered here.  American Home is

4    incorporated in Pennsylvania and has its principal place of

5    business in New York; O&G is incorporated in Connecticut and has

6    its principal place of business in Connecticut; Brosamer operates

7    as the regional office of a parent company headquartered in

8    Chicago.  Id. ¶¶ 10-11; ECF No. 49 ("Klupp Decl.") ¶ 2, Ex. A.

9    Thus there is no indication that any party to this case has any

10   relevant connection to this district.  By contrast, every party was

11   either involved in the construction or insurance of the

12   construction project that occurred in the Central District.  The

13   Court finds that this factor favors a transfer of venue.

14              **v.**     **Contacts Relating to Plaintiff's Cause of**

15                    **Action in the Chosen Forum**

16        No party has any contacts to this forum that relate to the

17   Plaintiff's cause of action.  The construction project that forms

18   the basis of this action occurred in the Central District; the

19   insurance policies at issue in this case were issued to the City of

20   Los Angeles, which is in the Central District; and the underlying

21   state court lawsuit is taking place in the Central District.  There

22   is no connection whatsoever between this lawsuit and the Northern

23   District of California.  By contrast, every party has substantial

24   contacts with the Central District relating to American Home's

25   cause of action.  The Court finds that this factor strongly favors

26   a transfer of venue.

27   ///

28   ///

1        **vi.      Differences in Costs of Litigation**

2        American Home makes no argument that it will be cheaper to

3    litigate this case in San Francisco.  On the other hand, the

4    underlying action is already being litigated in Los Angeles, no

5    potentially relevant witnesses or evidence is located in the

6    Northern District (much of the evidence is likely to be located in

7    the Central District), and the parties' counsel is located in Los

8    Angeles.  The Court finds that it will likely be significantly more

9    cost effective to try this case in the Central District.  This

10   factor, too, favors a transfer of venue.

11       **vii.     Compulsory Process to Procure Witnesses**

12       Federal Rule of Civil Procedure 45(a)(2) requires a subpoena

13   to issue from the court where the action is pending.  Were venue to

14   remain in this district, this Court would therefore be required to

15   issue any subpoenas necessary to procure witnesses.  But those

16   witnesses are likely to be in the Central District, and motions to

17   quash or modify would be made in the Central District.  Those

18   motions could be granted there or transferred back to this

19   district.  See Fed. R. Civ. P. 45(d)(3) (requiring court where

20   compliance with subpoena is sought to quash or modify improper

21   subpoenas); Fed. R. Civ. P. 45(f) (permitting compliance court to

22   transfer motions to issuing court).  If such a motion were

23   transferred to this Court, the Court would then need to transfer

24   its order back to the Central District for enforcement.  See Fed.

25   R. Civ. P. 45(f).  Thus while this Court has the necessary power to

26   procure witnesses in this case, the process would be much simpler

27   if this case were heard in the Central District of California.

28   ///

1      viii.      <u>**Ease of Access to Sources of Proof**</u>

2           To the extent that witnesses or documentary evidence will be

3    necessary to resolve this case, it is undisputed that those

4    witnesses and that evidence are located in the Central District.

5    All of the events from which this action arose, whether related to

6    the construction project or the underlying litigation, occurred in

7    the Central District.  Indeed, American Home does not even attempt

8    to argue that any relevant evidence is located in the Northern

9    District.  Instead, American Home makes the case that this action

10   is purely a matter of law and that no evidence will be required.

11   <u>See</u> Opp'n at 11-13.  Brosamer disagrees and produces examples of

12   witnesses located in the Central District who may provide relevant

13   evidence.  <u>See</u> Mot. at 11-12; Reply at 9-11.  The Court is not yet

14   in a position to determine the admissibility of all of the evidence

15   (or potential evidence) that the parties discuss.  However, the

16   Court notes that American Home's pending motion for summary

17   judgment absolutely touches on factual issues to which witness or

18   documentary evidence may be relevant -- for example, the extent to

19   which Defendants' construction work was defective.  It is obvious

20   and undisputed that almost all witnesses and evidence relevant to

21   this case are located in the Central District, and that none are

22   located here.  The Court finds that this factor favors a transfer

23   of venue.

24      ix.  <u>**Local Interest**</u>

25           The City of Los Angeles purchased the insurance policies at

26   issue in this case, and the extent of the coverage offered by those

27   policies is at issue.  The policies were issued to an insured

28   located in Los Angeles by producers located in Los Angeles.  The

**United States District Court**
For the Northern District of California

1    City of Los Angeles contracted for the allegedly defective

2    construction work, and that work was done in Los Angeles.

3    Defendant Tutor-Saliba is based in the Central District, while no

4    party to this case is a citizen of this district.  Finally, the

5    underlying lawsuit is taking place in Los Angeles.  For all of

6    these reasons, the Central District has a substantial interest in

7    the resolution of this case.  This district has no such interest

8    whatsoever.

9                   **4.   Conclusion**

10          Venue is proper in both this district and the Central District

11   of California.  However, it is abundantly clear that the

12   convenience of the parties and the interests of justice

13   overwhelmingly favor maintenance of this lawsuit in the Central

14   District.  Of the factors identified in GNC Franchising, only one,

15   the plaintiff's choice of forum, weighs against a transfer.  But

16   the Court accords that factor very little weight because none of

17   the events from which this case arose took place in this district

18   and because the plaintiff is not a citizen or resident of this

19   district.  One factor is neutral.  The others all favor

20   transferring this case to the Central District.  The facts make it

21   obvious that it will be easier, faster, and more cost effective to

22   litigate this case in the Central District, where virtually all of

23   the events giving rise to this case occurred and where the

24   underlying state court lawsuit is being tried.  Brosamer's motion

25   to transfer venue to the Central District of California is GRANTED.

26   ///

27   ///

28   ///

**V.     CONCLUSION**

        For the foregoing reasons, Defendant R&L Brosamer, Inc.'s

motion to dismiss for improper venue is DENIED.  Brosamer's

alternative motion to transfer venue is GRANTED.  The Court DIRECTS

the Clerk to transfer this case to the Central District of

California.  All pending motion hearing dates are hereby VACATED.


        IT IS SO ORDERED.


        May 12, 2015                    _____

                                        UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

15